On Application for Rehearing
This court's opinion of March 26, 2004, is withdrawn, and the following substituted therefor.
Brookwood Medical Center, Inc. ("the employer"), the defendant in a pending action brought by Janice Nixon ("the employee") pursuant to the Alabama Workers' Compensation Act, § 25-5-1 et seq., Ala. Code 1975 ("the Act"), petitions for a writ of mandamus directing the Jefferson Circuit Court to rescind an order compelling the employer to provide the employee with a list of four pain-management physicians. For the reasons stated herein, we grant the petition and issue the writ.
Among other things, the Act provides that an employer of an employee suffering a work-related injury shall pay for "reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, [and] medical and surgical supplies." Ala. Code 1975, § 25-5-77(a). In that regard, the Act substantially mirrors medical-benefit provisions present in workers' compensation laws in all states. See 5 Arthur Larson Lex K. Larson, Larson's Workers' Compensation Law § 94.01[1] (2003). However, all states do not allocate the power to choose who will provide medical and/or surgical services in the same way; while some states permit an employee to choose his or her own physician, either freely or from an approved panel, other states vest that power in employers. Larson at § 94.02[1].
From the original adoption of the Act in 1919 until 1973, Alabama allocated employers the exclusive power to designate a physician or a surgeon to render medical or surgical treatment for which the employer was financially responsible under the Act.E.g., Ala. Code 1940 (Recomp. 1958), tit. 26, § 293. Although the Act did provide an exception for "emergency" care, the prevailing rule was that "[o]nly if the employer did not promptly assert its right to furnish medical treatment could the employee select his or her own health care provider." 2 Terry A. Moore,Alabama Workers' Compensation § 17:13 (1998) (footnote omitted).
Between 1973 and 1985, the Legislature amended the Act on three pertinent occasions. The Act was first amended in 1973 by § 21 of Act Number 1062, Ala. Acts 1973, which provided, in pertinent part:
 "If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer and in such event the employee shall be referred to a second physician selected by the employer. In *Page 1002 
the event surgery is required, if the employee is dissatisfied with the designated physician, he may so advise the employer and in such event the employee shall be referred to a second physician selected by the employer."
We stated in United States v. Bear Brothers, Inc.,355 So.2d 1133 (Ala.Civ.App. 1978), that the 1973 amendment indicated that "the employer has the right to select the medical or surgical attendant who will treat the employee" and that "if the employee is dissatisfied with the physician selected by the employer, he should advise the employer of this fact so that the employer can select another physician." 355 So.2d at 1137-38. We also indicated that "the unjustified obtainment by an employee of medical care from sources other than those selected by the employer without the latter's knowledge or consent may, in appropriate instances, excuse the employer from liability for the costs incurred by the employee." 355 So.2d at 1137; accord,Condry v. Jones Farm Equip. Co., 358 So.2d 1030 (Ala.Civ.App. 1978) (where record did not indicate notice to an employer of dissatisfaction of an employee with employer-selected physician, employer did not have duty to pay for medical care rendered by a different physician without employer's authorization).
The Act was again amended in 1975 by § 8 of Act Number 86, Ala. Acts 1975 (Fourth Special Session), so as to add the following pertinent language:
 "[I]f the employee is dissatisfied with the second physician selected by the employer, the employee may so advise the employer and in such [event] the employee shall be referred to a third physician selected by the employer. In the event surgery is required, if the employee is dissatisfied with the designated surgeon, he may so advise the employer, and in such event the employee shall be referred to a second surgeon selected by the employer; if the employee is dissatisfied with the second surgeon designated by the employer to perform surgery, the employee may so advise the employer and in such event the employee shall be referred to a third surgeon selected by the employer."
Although the Legislature, in adopting the 1975 amendment to the Act (which was later codified as a portion of § 25-5-77(a), Ala. Code 1975), had given injured employees, in effect, two "rights of refusal" with respect to employer-selected treating physicians and surgeons, we did not construe that amendment as having substantially altered the physician-selection process:
 "Section 25-5-77(a)[, Ala. Code 1975,] provides in pertinent part that `the employer shall pay the cost of reasonably necessary' medical expenses arising out of a work-related accident. As provided in that section, the employer is to select the physician, but `[i]f the employee is dissatisfied with the initial treating physician, selected by the employer and if further treatment is required, the employee shall be referred to a second physician selected by the employer.' If the employee is dissatisfied with the second physician, he may notify his employer who will select another physician. . . . Thus, it is clear from the statute that the selection of the initial physician and of other physicians in the event of employee dissatisfaction is a decision for the employer. It is also clear from the statute that the employee must notify the employer before consulting a physician or before changing physicians except in the case of an emergency. United States v. Bear Brothers, Inc., 355 So.2d 1133 (Ala.Civ.App. 1978)."
Jasper Cmty. Hosp., Inc. v. Hyde, 419 So.2d 594, 596
(Ala.Civ.App. 1982) (emphasis added). *Page 1003 
In 1985, the Legislature again amended the Act with respect to physician selection, but it utilized a different approach. Under Ala. Code 1975, § 25-5-77(a), as amended by § 8 of Act Number 85-41, Ala. Acts 1984, and as currently in force, an employee's former right to dissent to two employer-selected physicians or surgeons rather than one was replaced by a single right of dissent, as in the 1973 version of the Act; however, employees were, for the first time, afforded a limited right of selection:
 "If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from a panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer. If four physicians or surgeons are not available to be listed, the employer shall include on the list as many as are available. The four physicians or surgeons selected by the employer hereunder shall not be from or members of the same firm, partnership, or professional corporation."
In Ex parte Alabama Power Co., 863 So.2d 1099, 1102
(Ala.Civ.App. 2003), we summarized the current state of the law with respect to an employer's rights and duties concerning medical care due employees arising from work-related injuries:
 "Section 25-5-77(a), Ala. Code 1975, a portion of the Act, provides, among other things, that an employer of an injured worker shall timely pay for that worker's `reasonably necessary medical and surgical treatment and attention, physical rehabilitation, medicine, [and] medical and surgical supplies . . . as the result of an accident arising out of and in the course of the employment.' See also § 25-5-77(h). That duty to pay is accompanied under the Act by a corresponding power in the employer to exercise considerable control over the medical care for which it must pay, including the right to choose the employee's physician in the first instance and the right to compel the injured employee to submit to an examination by that physician at all reasonable times. See § 25-5-77(a) and (b), Ala. Code 1975. Although the Act provides that the employee may advise the employer if he or she is dissatisfied with the physician designated by the employer, the employee's remedy in such a circumstance is to select another physician from a panel or list of available physicians (usually four) specified by the employer. See § 25-5-77(a), Ala. Code 1975. Whether designated in the first instance by the employer or chosen by the employee from a so-called `panel of four' provided by the employer, the selected physician becomes the employee's authorized treating physician under the Act."
Having set forth the legal background, we now turn to the dispute between the parties that implicates the foregoing statutes. In July 2002, the employee suffered a work-related injury to her back, which resulted in, among other things, a herniation of one of the employee's vertebral disks. The employee initially underwent treatment for that injury provided by Dr. Carter Morris, a physician chosen by the employer; among other things, Dr. Morris recommended, and later performed, a surgical procedure known as a "microdiskectomy" on the employee's lumbar spine in March 2003, and he referred the employee to physical therapy. *Page 1004 
In August 2003, Dr. Morris referred the employee (apparently with the employer's consent) to Dr. Matthew Berke for further treatment with respect to "pain management" and released the employee to return to light-duty work. A few days after Dr. Morris indicated that the employee could return to work, the employee notified the employer of her dissatisfaction with Dr. Morris as her authorized treating physician, whereupon the employer, pursuant to Ala. Code 1975, § 25-5-77(a), supplied the employee with a panel of four physicians from which the employee selected Dr. Martin Jones to be her authorized treating physician. Dr. Jones, like Dr. Morris had done, referred the employee to Dr. Berke for further treatment. Dr. Berke, in turn, referred the employee in October 2003 to Dr. Ronald Moon for further pain-management treatment. However, the employee failed to keep a scheduled appointment with Dr. Moon and, through counsel, requested that a second panel of four physicians be provided. Although counsel for the employer notified the employee's counsel that it did not believe the employee was entitled to a second panel of physicians, the employer nominated another physician in lieu of Dr. Moon; however, the employee, through counsel, rejected that alternate physician as well.
On October 27, 2003, the employee filed a motion seeking to compel the employer to provide a second panel of four physicians. Specifically, the employee contended that she was "entitled to a panel of pain management doctors from whom to choose one to treat her at [the employer's] expense." The employer opposed the employee's motion, arguing that requiring it to provide a panel of four physicians after one had already been provided to the employee would "exceed the delineated scope of § 25-5-77(a)." On December 9, 2003, the trial court entered an order granting the employee's request. Invoking the doctrine that "workers' compensation laws are to be liberally construed to effectuate the beneficent purposes of the Act," the trial court opined that a second panel was warranted because "the practice of medicine has evolved from the days of the traveling family doctor . . . into a highly specialized team approach," and it averred that "the beneficent purposes of the Act are best served by permitting the injured worker as much flexibility as is fair within the strictures of the law." The trial court expressly held that "as an injured worker progresses with medical treatment for an injury through different areas of medical specialty, the worker is entitled to a panel of doctors from which to choose a replacementfrom each medical specialty" (emphasis added). As a final note, the trial court added that "[i]f the intention of the Legislature is to restrict the choice of the injured worker otherwise, this Court invites that body to clarify its intent."
On January 13, 2004, within a presumptively reasonable time for seeking review of the trial court's order,[1] the employer filed a petition for a writ of mandamus seeking an order compelling the trial court to vacate its December 9, 2003, order. This court has jurisdiction pursuant to § 12-3-10, Ala. Code 1975, affording this court exclusive appellate jurisdiction to issue extraordinary writs in workers' compensation actions in the first instance, and we have solicited briefs from the parties concerning the issues raised in the petition; we have also stayed the trial court's order pending our decision on the employer's *Page 1005 
petition.[2]
Has the employer shown a "clear legal right" to the writ of mandamus and an "imperative duty" that the trial court must perform, see Ex parte Wal-Mart Stores, Inc., 794 So.2d 1085,1087 (Ala. 2001), so as to warrant mandamus relief? We answer that question in the affirmative.
As we have detailed, at no point has the Legislature, as a component of the Act's remedial scheme, afforded employees complete freedom to select a physician who will provide medical services at the employer's ultimate expense. That said, §25-5-77(a), as currently in force, reflects the current sense of the Alabama Legislature that there should be some sort of "compromise between the employer's desire to completely control the physical rehabilitation process and the employee's desire for complete freedom of choice as to his or her physician." 2 Terry A. Moore, Alabama Workers' Compensation § 17:13 (1998). The history of the Act, as we have set forth, indicates that the Legislature, in 1973, first acknowledged the possibility that an injured employee may have valid reasons for objecting to a particular employer-selected physician and that, in that event, that employee should be able to reject that particular physician and have another selected by the employer. In doing so, the Legislature first attempted to balance two seemingly desirable, yet somewhat conflicting, values:
 "The first is the value of allowing an employee, as far as possible, to choose his or her own doctor. This value stems from the confidential nature of the doctor-patient relation, from the desirability of the patient's trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury. If the injured employee has completely unlimited free choice of [a] doctor, in some cases he or she may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process."
5 Arthur Larson Lex K. Larson, Larson's Workers' CompensationLaw § 94.02 [2] (2003) (footnote omitted).
As we have noted, the employee's right of first refusal was expanded in 1975 by the Legislature to allow an employee, if dissatisfied with the employer's initial and second choice of physicians, to reject those choices and have a third physician selected by the employer. However, when the Legislature again amended the Act in 1985 to confer limited selection power upon employees via the "panel of four" mechanism, that body removed
all provisions that would permit an employee to reject a second
employer-provided physician in lieu of a third. Stated another way, the Legislature has never simultaneously provided in the Act for an employee to reject more than one employer-provided physician and for an employee to be entitled to select a replacement physician from an employer-nominated panel of four. As a result, "[o]nce the employee has exercised his or her right to a panel of four, the [Act] does not provide for additional panels," and "[i]f the employee becomes dissatisfied with the *Page 1006 
doctor selected from the panel of four, he or she has no statutory right to request a second panel of four." 2 Terry A. Moore, Alabama Workers' Compensation § 17:21 (Supp. 2003).
We recognize, like the trial court, that the practice of medicine has changed, in many respects, since the Act was first passed by the Legislature in 1919. We further acknowledge the abstract force of the employee's contentions that the trial court's ordering a second panel of four in this case might represent a "logical evolution" in the law, that it might further the "beneficent purposes" of the Act, and that affording employees greater choice in who provides them medical services might be "fair." However, it is not the role of the judiciary to "improve upon" legislation such as the Act, even upon such grounds as necessity based upon the passage of time. See § 43, Ala. Const. 1901 ("the judicial [department] shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men"). In this specific context, the Alabama Supreme Court has emphasized that while we must liberally construe the Act to effectuate its beneficent purposes, "such a construction must be one that thelanguage of the statute `fairly and reasonably' supports." Exparte Dunlop Tire Corp., 706 So.2d 729, 733 (Ala. 1997) (quotingEx parte Beaver Valley Corp., 477 So.2d 408, 411 (Ala. 1985)).
The employee contends on rehearing that to allow only one panel of four "surely is not consistent with legislative intent"; she posits that in some instances, such as where an employee suffers multiple injuries, it is possible that an employer could assign, or a designated treating physician could refer, an employee who has previously exhausted his or her panel rights to an incompetent physician. To the contrary, as this court recognized in City of Auburn v. Brown, the physician-selection system set forth in § 25-5-77(a) operates under the understanding "that the physicians, who are approved by the employer as treating physicians, are competent medical doctors equipped with the knowledge to properly and adequately treat the injuries which are presented to them by the employee." 638 So.2d at 1341. Even were an employer or a treating physician to undermine that understanding by selecting an incompetent physician, however, our law recognizes that there are certain instances in which an employee's obtaining treatment other than that offered by the employer may properly be deemed justified, including where the employer has "neglected or refused" to provide necessary medical care. See id.
In this case, the employer was wrongly compelled, in contravention of § 25-5-77(a), to provide a second panel of four physicians after the employee had already expressed dissatisfaction with a former treating physician and had already been allowed to choose another physician from an employer-nominated panel of four. Because we conclude that the order under review deprives the employer of its rights regarding the selection of a treating physician, we grant the employer's petition for a writ of mandamus. The trial court is hereby directed to rescind its December 9, 2003, order. See Ex parteWal-Mart Stores, Inc., 794 So.2d at 1089.
OPINION OF MARCH 26, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED; PETITION GRANTED; WRIT ISSUED.
CRAWLEY and THOMPSON, JJ., concur. *Page 1007 
MURDOCK, J., concurs in the result, with writing.
YATES, P.J., dissents, with writing.
[1] See Rules 4(a) and 21(a), Ala. R.App. P.; see also Exparte Troutman Sanders, LLP, 866 So.2d 547 (Ala. 2003) (a "motion to reconsider" does not toll the time for filing a petition for a writ of mandamus seeking review of an interlocutory order).
[2] The employee's "motion for expedited disposition" is denied as moot in light of our disposition.