Because I do not believe that the employer is entitled to the relief sought, I must respectfully dissent from the main opinion.
The employer petitions this court for a writ of mandamus directing the Jefferson Circuit Court to vacate its order compelling the employer to provide the employee with a list of four pain-management physicians. A writ of mandamus will issue where the petitioner demonstrates "`(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.'" Ex parte Fontaine Trailer Co.,854 So.2d 71, 76 (Ala. 2003), quoting Ex parte State ex rel. C.M.,828 So.2d 291, 293 (Ala. 2002).
Following a hearing on the employee's motion for the employer to provide a panel of four pain-management physicians, the trial court entered the following order:
 "1. [The employee] was injured as a result of an accident in the course and scope of her employment with the defendant on or about July 19, 2002. Thereafter, her authorized treating physician, Dr. Carter Morris, performed two surgeries to her lower back. Dr. Morris then referred the [employee] to Dr. Berke, a physiatrist, who has rendered all of the care that his specialty in medicine recognizes. [The employee], however, continued to suffer in severe pain.
 "2. She requested a panel of four physicians from her employer, through the appropriate contact for such requests through her employer's workers' compensation program. From that panel, she chose Dr. Martin Jones, another surgeon. Dr. Jones examined [the employee], and concluded that further surgery was not indicated. Due to the continuing pain suffered by [the employee], she returned to Dr. Berke, who then referred her to Dr. Ronald Moon for pain management.
 "3. [The employee] is dissatisfied with the designation of Dr. Moon. She *Page 1008 
requested a panel of four pain management physicians, and that request was refused.
 "4. The panel previously offered and accepted by [the employee] was not a panel in the field of pain management, the field in which she presently requests a panel.
 "ISSUE "The issue before the Court is whether Alabama Workers' Compensation Act permits a court to require an employer to provide a second panel of four physicians from which an injured worker may choose one to treat her as the authorized treating physician when the requested second panel is in a different field of medicine than the field exemplified in the initial panel.
 "ANALYSIS "The analysis must begin with Alabama Code § 25-5-77(a), the statute governing the Act's requirement for the provision of medical benefits. And, as always, the Court is mindful of that mandate now so well established that it now no longer even merits citation to authority — the workers' compensation laws are to be liberally construed to effectuate the beneficent purposes of the Act.
 "The familiar phrase `panel of four' has its genesis in each of two consecutive sentences of § 25-5-77(a): `If the employee is dissatisfied with the initial treating physician selected by the employer and if further treatment is required, the employee may so advise the employer, and the employee shall be entitled to select a second physician from the panel or list of four physicians selected by the employer. If surgery is required and if the employee is dissatisfied with the designated surgeon, he or she may so advise the employer, and the employee shall be entitled to select a second surgeon from a panel or list of four surgeons selected by the employer.'
 "As is immediately apparent from the plain language of the statute, dissatisfaction with the initial treating physician, and later dissatisfaction with a designated surgeon, may each entitle an injured worker to the provision of a panel from which to choose an alternative. Implicit in that concept is that different stages of treatment are contemplated by the Legislature — and with good reason.
 "Like the practice of law, the practice of medicine has evolved from the days of the traveling family doctor making house calls and treating all varieties of ailments and diseases into a highly specialized team approach dedicated to the healing of the injured and infirm. A worker with a back injury, for example, may have initial treatment from the general practitioner who serves as the `company doctor,' and then be referred by that doctor to an anesthesiologist for a series of epidural steroid injections to try and avert the pain of the worker. Failing that, the anesthesiologist might refer the worker to a radiologist to perform an MRI, who may then refer the worker to an orthopedic surgeon. Following surgery, the worker might then be referred to a physiatrist to attempt physical therapy and work hardening, and failing that, to a doctor specializing in pain management to teach the worker skills to learn to cope with the intractable pain.
 "These observations are hardly original with the undersigned, nor are they uniquely held. In Waffle House v. Howard, 794 So.2d 1123, 1130 (Ala.Civ.App. 2000), the Court of Civil Appeals of Alabama expressed as `well reasoned and consistent with the law of this state' the *Page 1009 
following rationale of the Circuit Court of Marshall County: `"Medicine today is a team effort. It may well be that when the Act was passed the idea of one physician who treated everything[, who] diagnosed, read the X-rays, decided upon and performed surgery, and then supervised follow up care was an acceptable view of medicine, but it is no longer."'
 "The Court also considers that a worker could, in a single accident, suffer injuries to his eye and to his knee. Obviously, such a catastrophe could trigger treatment by two primary treating doctors, each in a different field — perhaps ophthalmology and orthopedics. If the worker was dissatisfied with the ophthalmologist treating his eye injury, he would be entitled to a panel from which to select a replacement. But by so doing, if he were to become dissatisfied with the orthopedic surgeon treating his knee, would the law sanction an employer's refusal to provide a panel from which the worker could select a replacement? This Court thinks not.
 "It is the body of the injured worker subjected to the examinations and treatment regimens of the doctor, and the mind of the worker that needs some level of assurance and confidence in the one treating his injuries. While the law gives the employer primary rights in the selection of physicians required to be paid to provide the treatment needed by the worker, the law also reflects some level of compassion in permitting a limited system of choice for the benefit of the injured worker. In the example of the worker afflicted with ophthalmological and orthopedic injuries, it would further no purpose of the law to restrict the provision of a panel to one specialty only.
 "This Court accepts that the trade-off of requiring the employer to provide funding for reasonably necessary medical care — despite any finding of fault on the employer's part in bringing about the injury that necessitated the care — carries with it the employer's right to supervise and control the care provided within some limits. In City of Auburn v. Brown, 638 So.2d 1339, 1340-41 (Ala.Civ.App. 1993), the court wrote it this way:
 "`In determining who the treating physician will be in a workmen's compensation case, the drafters of the applicable Alabama statute took into consideration two desirable values. Professor Larson describes the values as follows:
 "`"The first is the value of allowing an employee, as far as possible, to choose his own doctor. This value stems from the confidential nature of the doctor-patient relation, from the desirability of the patient's trusting the doctor, and from various other considerations. The other desirable value is that of achieving the maximum standards of rehabilitation by permitting the compensation system to exercise continuous control of the nature and quality of medical services from the moment of injury. If the injured employee has completely unlimited free choice of his doctor, in some cases he may select a doctor, because of personal relationship or acquaintance, who is not qualified to deal with the particular kind of case, or who at any rate is incapable of providing service of the quality required for the optimum rehabilitation process."'
 "`2 A Larson, The Law of Workmen's Compensation §§ 61.12(b), at 10-790 (1989).' *Page 1010 
 "In the final analysis, affording the employee merely a choice in some circumstances does nothing to interfere with the employer's supervision and control in any meaningful way.
 "Guided by the forgoing observations and analysis, the Court concludes that the beneficent purposes of the Act are best served by permitting the injured worker as much flexibility as is fair within the strictures of the law. Section 25-5-77(a) does not expressly provide that injured workers are restricted to a single panel of four.
 "Accordingly, the Court is of the opinion that [as] an injured worker progresses with medical treatment for an injury through different areas of medical specialty, the worker is entitled to a panel of doctors from which to choose a replacement for each medical specialty upon his reasonable dissatisfaction with the one designated initially by the employer."
Although I agree with the main opinion's statement that it is not the role of this court to "improve upon" the Act in question, 895 So.2d at 1006, keeping in mind the mandate that the Act is to be liberally construed in order to effectuate its beneficent purpose, I find nothing in the Act that specifically prohibits the trial court from requiring the employer to present the employee with a second panel of four physicians practicing in a different medical specialty from which to choose. Accordingly, because I find the trial court's opinion to be well reasoned and instructive on the issue presented, I adopt it in respectfully dissenting from the main opinion in this case.